# UNITED STATES DISTRICT COURT MIDDLE DISTRICT OF TENNESSEE AT NASHVILLE

---

WYNDHAM VACATION RESORTS, INC.,
STERLING FOREST TOWNHOUSE
ASSOCIATION, INC., KENSINGTON
WOODS TOWNHOUSE ASSOCIATION,
INC., OAK KNOLL PROPERTY OWNERS
ASSOCIATION, INC., STONECASTLE
PROPERTY OWNERS ASSOCIATION,
INC. LAUREL RIDGE TOWNHOUSES
PROPERTY OWNERS ASSOCIATION, INC.,
WELLINGTON PLACE CONDOMINIUM
PROPERTY OWNERS ASSOCIATION, INC.,

     **Plaintiff,**

v.                                     Case No. _____

VP TRANSFERS, LLC;
VACATION WISHES, LLC;
RESORT PROPERTY HOLDINGS, LLC;     **Jury Demand**
ROGER KARES, and
DANA L. BOUCHER,

     **Defendants.**

---

## COMPLAINT

---

COMES NOW, Plaintiffs, Wyndham Vacation Resorts, Inc., ("Wyndham"), Sterling Forest Townhouse Association, Inc., Kensington Woods Townhouse Association, Inc., Oak Knoll Property Owners Association, Inc., Stonecastle Property Owners Association, Inc., Wellington Place Condominium Property Owners Association, Inc., and Laurel Ridge Townhouse Property Owners Association, Inc., and file this Complaint against all Defendants and for its cause of action alleges as follows:

1

## NATURE OF CASE

(1)   This cause of action is predicated upon theories of Civil RICO, Intentional Interference with Current and Prospective Business Relations, Breach of Contract, Intentional Interference with Contractual Relations, Procurement of Breach of Contract, violation[s] of the Tennessee Consumer Protection Act and Civil Conspiracy.   Defendants are an enterprise committing various acts of mail, wire and financial fraud.   The enterprise is meticulously structured to orchestrate the following activities:   (1)  fraudulently induce timeshare owners to participate in sham transactions and illegal/fraudulent conveyances; (2)  defraud Wyndham, Homeowners Associations and other third-party creditors; and (3)  permit Defendants to garner ill gotten gains from Defendants' scheme going forward.

(2)   Defendants induce timeshare owners to purchase Defendants' services under the auspices that Defendants' services will absolve timeshare owners from all legal liability under their existing timeshare contracts.   Defendants, however, are fraudulently inducing unsuspecting Wyndham owners to pay Defendants to unknowingly participate in fraudulent conveyances. Defendants charge Wyndham owners to transfer their contracts, titles or deeds into undercapitalized shell companies.   These fraudulent conveyances are made with the intent to hinder, delay or defraud creditors such as Wyndham and the Plaintiff Homeowners Associations.

(3)   Timeshare owners are unaware that they are being charged for fraudulent conveyances that are void and, therefore, do not operate to absolve them of "all" their legal

2

liability. Defendants utilize judgment proof sham companies to hold timeshare titles because Defendants have no intention, at any time, to ever pay the contractually obligated fees timeshare owners paid Defendants to assume. Defendants meticulously structured the companies forming the enterprise to enable Defendants to profit from the timeshare contracts held in sham companies while intentionally defaulting on the assumed payment obligations. Defendants accomplish this by selling vacation packages to third-parties from a separately maintained company that on the surface appears unrelated to the sham companies. These profits are in addition to the fees defendants derive from or charge for the fraudulent conveyances.

(4) Plaintiffs' damages in this case include both past and present monetary losses, incurring unnecessary expenses and costs associated with Defendants' conduct, loss of future business and income and substantial harm to Wyndham's most vital asset, Wyndham's goodwill and the relationships Wyndham has with its customers. Approximately two-thirds (2/3) of Wyndham's business emanates from existing customers upgrading their Wyndham ownerships and/or purchasing additional services from Wyndham. Wyndham's relationships with existing customers also result in substantial referral business. Defendants' tortious interference with these relationships substantially impairs Wyndham's ability to maintain goodwill and cultivate relationships with Wyndham customers that typically generate long term financial profit and consistent growth of its customer base. Defendants thereby deprive Wyndham of the opportunity for substantial and ongoing profits. Defendants' actions cause damages and losses that extend well beyond the scope of losses related directly to contractual damages of each individual contract.

## THE PARTIES

(5) Wyndham is a Delaware corporation with a principal place of business at 8427 South Park Circle, Orlando, Florida 32819.

(6) Sterling Forest Townhouse Association, Inc., is a Tennessee Corporation with a principal place of business at 109 Fairfield Boulevard, Fairfield Glade, Tennessee 38558.

(7) Kensington Woods Townhouse Association, Inc., is a Tennessee Corporation with a principal place of business at 109 Fairfield Boulevard, Fairfield Glade, Tennessee 38558.

(8) Oak Knoll Property Owners Association, Inc., is a Tennessee Corporation with a principal place of business at 109 Fairfield Boulevard, Fairfield Glade, Tennessee 38558.

(9) Stonecastle Property Owners Association, Inc., is a Tennessee Corporation with a principal place of business at 109 Fairfield Boulevard, Fairfield Glade, Tennessee 38558.

(10) Wellington Place Condominium Property Owners Association, Inc., is a Tennessee Corporation with a principal place of business at 109 Fairfield Boulevard, Fairfield Glade, Tennessee 38558.

(11)  Laurel Ridge Townhouse Property Owners Association, Inc., is a Tennessee Corporation with a principal place of business at 109 Fairfield Boulevard, Fairfield Glade, Tennessee 38558.

(12)  VP Transfers, LLC, is a member-managed limited liability company registered with the Missouri Secretary of State.  The registered agent is Roger A. Kares.  Kares' address is listed as 3HC, Box 33, Eminence, Missouri 65466.  Kares is also the listed agent for service of process and can be served at 20 Clinebrook Drive, Crossville, Tennessee 38558.

(13)  Vacation Wishes is a Tennessee limited liability company.  Vacation Wishes is listed as a member-managed entity.  The Registered Agent and agent for service of process is Dana L. Boucher located at 128 Georgia Avenue, Oak Ridge, Tennessee 37830-5411.

(14)  Resort Property Holdings, LLC, is a member-managed LLC and is registered with the Missouri Secretary of State.  The registered agent is Roger A. Kares.  Kares' address is listed as 3HC, Box 33, Eminence, Missouri 65466.  Kares is the agent for service of process and process can be served at 20 Clinebrook Drive, Crossville, Tennessee 38558.

(15)  Roger Kares is a citizen of Crossville, Tennessee, and is the owner of, controls and/or manages VP Transfers, Resort Property Holdings, and/or Vacation Wishes.  Kares may be served at 20 Clinebrook Drive, Crossville, Tennessee 38558.

(16)  Dana L. Boucher is a citizen of Oak Ridge, Tennessee, and is owner, controls and/or manages Vacation Wishes.  Dana L. Boucher may be served process at 128 Georgia Avenue, Oak Ridge, Tennessee 37830-5411.


## JURISDICTION


(17)  This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367.  Jurisdiction is conferred under 28 U.S.C. § 1331 by virtue of 18 U.S.C. §§ 1961 –1968 & 901(a).


## VENUE


(18)  Venue is proper in this district pursuant to 28 U.S.C. §1391(a) in that a substantial part of the alleged events giving rise to the original claim occurred and continue to occur in the Middle District of Tennessee.  Defendants conduct business in this district and/or reside in this district.


## FACTS


(19)   Wyndham develops markets, sells, and manages vacation timeshare ownership interests and provides consumer financing to owners.

(20) Wyndham timeshares provide an alternative for individuals wanting a vacation home, but who cannot afford or justify the expense of buying additional fixed real estate and want the flexibility of traveling to many different vacation destinations.

(21) Wyndham is an innovator in the timeshare industry. Wyndham was one of the first companies to utilize a points-based ownership system providing owners with the flexibility to select personalized vacation criteria such as timing, duration, location and accommodation options.

(22) Wyndham timeshare owners benefit from Wyndham's size, structure and product innovations. Wyndham is the world's largest vacation timeshare company with approximately 1,000,000 owner families worldwide and an extensive and diverse portfolio of resorts. Wyndham provides access to the largest number of vacation ownership resorts and individual vacation ownership units.

(23) Wyndham offers many intrinsic values to its clientele. Wyndham offers its owners with the opportunity to vacation at thousands of resorts worldwide through its international exchange affiliations.

(24) Wyndham is supported by approximately 13,300 employees globally. Wyndham has developed or acquired more than 180 vacation ownership resorts throughout the United States, Canada, Mexico, the Caribbean, and the South Pacific representing more than 20,500 individual vacation ownership units.

7

(25)  Wyndham owners purchase timeshare properties or interests through Wyndham and enter into contracts with Wyndham.  These individuals or families can then participate in a points system and/or other innovative programs allowing them the benefits of timeshare ownership combined with the ability to travel to numerous resorts and destinations throughout the world.

(26)  Wyndham focuses on and emphasizes customer relations.  Maintaining good will and good customer relations are vital components to Wyndham's success in the industry and overall business success.

(27)  A large percentage of Wyndham's business is repeat business from existing timeshare owners, including Wyndham owners purchasing additional points and/or upgrades and Wyndham owners referring new buyers.

(28)  Wyndham focuses significant time and resources on developing and maintaining its owner base and Wyndham emphasizes owner relations and customer service.

(29)  A third party's interference with Wyndham's existing customers has far reaching economic, goodwill and reputational consequences.

(30)  Wyndham owners typically own real property at Wyndham timeshare locations. These Wyndham owners have deeds that are filed as part of the services provided by Wyndham.

(31)  Wyndham and the Plaintiff Homeowners Associations provide maintenance, upkeep, and other services to Wyndham owners.  In exchange, Wyndham owners have

8

contractual obligations to pay yearly maintenance fees. These fees cover a wide array of services provided by Wyndham and the Plaintiff Homeowners Associations.

(32)   Sterling Forest Townhouse Association, Inc., Kensington Woods Townhouse Association, Inc., Oak Knoll Property Owners Association, Inc., Stonecastle Property Owners Association, Inc., Wellington Place Condominium Property Owners Association, Inc., and Laurel Ridge Townhouse Property Owners Association, Inc., are Homeowners Associations providing services including, but not limited to:  maintaining the grounds and common areas, maintaining landscaping, maintaining recreational facilities, providing security, arranging for street maintenance, and enforcing restrictive covenants and deed restriction when necessary to protect timeshare owners' interests.

(33)  Plaintiff Homeowners Associations charge fees for the services provided and rely upon each owner to pay their pro rata portion of the fees to cover expenses and services necessary to maintain and protect the premises.

(34)  Kares and/or Boucher own and/or control VP Transfers, Vacation Wishes, and/or Resort Property Holdings.

(35)  All Defendants are in the timeshare industry and are part of an association-in-fact created for the purpose of generating substantial income through deceptive, illegal and fraudulent practices.

9

(36) Kares and/or Boucher organized and structured at least three companies that they and others utilize to further the commission of various wrongful and illegal acts including, but not limited to: mail fraud, wire fraud, and/or financial fraud.

(37) Defendants' illegal and fraudulent activities wrongfully deprive Wyndham of certain contractual rights, monies, and fees and interfere with Wyndham's contractual relationships with its customers.

(38) Kares has eight current contracts with Wyndham. He owns timeshare properties under the terms of his Wyndham contracts and he has rights and obligations under the terms of his Wyndham contracts.

(39) Kares' relationship with Wyndham has placed him on notice of both the rights of Wyndham owners and the obligations of Wyndham owners under the contractual terms and provisions contained in Wyndham timeshare contracts.

(40) Kares has specific knowledge of Wyndham owners' contractual obligations including the obligation to pay yearly maintenance fees.

(41) Defendants target timeshare owners including Wyndham timeshare owners. Defendants induce timeshare owners to purchase Defendants' services under the auspice that Defendants' services will absolve them from all legal liability, including any obligation to pay fees to Wyndham or Plaintiff Homeowners Associations, under their timeshare contracts.

10

(42)  Defendants represent to Wyndham owners that VP Transfers will quitclaim their deeds into a company and that the transfer of title will remove any and all of the owner's legal and contractual responsibilities owed to Wyndham and Plaintiff Homeowners Associations.

(43)  Defendants utilize VP Transfers to transfer title into either Vacation Wishes or Resort Property Holdings, both of which are sham companies.

(44)  Defendants and/or VP Transfers may also transfer timeshares into other undercapitalized LLCs that are unknown to Wyndham at this time.

(45)  The transactions between VP Transfers and the sham companies, Vacation Wishes and Resort Property Holdings, are not arms length transactions.  VP Transfers collects fees from Wyndham owners to transfer title into either Vacation Wishes or Resort Property Holdings. Vacation Wishes and Resort Property Holdings assume contractual obligations owed to Wyndham (i.e., debt and mortgage fee obligations) while VP Transfers gains all the benefit of these transactions (ability to generate income without payment of debt owed).

(46)  Kares and/or Boucher have grossly undercapitalized Vacation Wishes and Resort Property Holdings and this undercapitalization is intentional.  Vacation Wishes and Resort Property Holdings are set up as judgment proof sham companies.  The sham company structure enables Defendants to default on the contractual obligations owed to Wyndham while still retaining the ability to generate income from the timeshare contracts on an ongoing basis.

11

(47)   Kares and/or Boucher dominate VP Transfers, Vacation Wishes and Resort Property Holdings.   Kares and/or Boucher have set this domination in place so that the companies may be used to commit a wrong against Wyndham, Plaintiff Homeowners Associations, Wyndham owners and other timeshare owners and companies.

(48)   Vacation Wishes and Resort Property Holdings are merely conduits for the business of VP Transfers, Kares and Boucher.  Any limited liability that would generally be attached to an LLC must be disregarded because Vacation Wishes and Resort Property Holdings are sham companies operated as the alter ego of Kares and/or Boucher.

(49)   Defendants have attempted to transfer, through VP Transfer, title of at least thirty five Wyndham properties into Vacation Wishes.   These thirty-five transfers occurred between October 2010 and May 24, 2012.  The yearly breakdown is as follows:  6 fraudulent conveyances in 2010, 20 fraudulent conveyances in 2011, and 9 known fraudulent conveyances in 2012.

(50)   Defendants have attempted to transfer, through VP Transfers, title to at least five Wyndham properties into Resort Property Holdings.   These transfers occurred on or about December 12, 2011, January 4, 2011, May 23, 2012, May 24, 2012, and June 7, 2012.

(51)   Defendants utilize the United States Mail, Fed Ex, and/or UPS to send and/or receive forms, documents and titles to and from timeshare owners for their completion/signatures and to accomplish transfer of timeshare contracts, titles or deeds to either VP Transfers, Vacation

Wishes or to Resort Property Holdings. Defendants' use of the United States Mail, Fed Ex, and/or UPS occurred on or about the dates of transfers between October of 2010 and present.

(52) Defendants communicate via telephone, email, and/or facsimile with timeshare owners regarding the service[s] provided by Defendants. The communications occurred on or about the dates of each transfer between October of 2010 and present.

(53) Defendants and/or their agents provide instructions to timeshare owners via telephone, email and/or facsimile regarding how transfer is accomplished, payment methods, what documents must be completed and/or to answer any questions timeshare owners may have concerning the services offered by Defendants. These communications occurred on or about the dates of each transfer between October of 2010 and present.

(54) Vacation Wishes and/or Resort Property Holdings do not abide by the contractual duties of Wyndham owners once a property has been deeded to these companies.

(55) Defendants utilize sham companies to hold Wyndham titles because Defendants never have any intention of paying the contractually obligated fees owed to Wyndham.

(56) Defendants' actions deprive Plaintiffs of the contractual benefits owed to Plaintiffs and forces Wyndham to place liens on the properties fraudulently conveyed. Wyndham will ultimately be forced to foreclose on the properties.

13

(57)  Wyndham has sustained damages related to the properties Defendants transferred into sham companies.  These damages include costs of being forced to file liens and foreclosure actions.

(58)  Defendants' scheme results in noneconomic damages to Wyndham, including, but not limited to, loss of goodwill and damage to reputation, with Wyndham's current and prospective owners and/or the public.

(59)  Wyndham owners have been assured by these illegitimate third-parties that their obligations to Wyndham and Plaintiff Homeowners Associations have ceased.  Defendants, however, have induced Wyndham owners to pay for fraudulent conveyances that are void and/or voidable and that do not eliminate their legal liability.  This situation leads to unhappy Wyndham owners, damage to Wyndham's reputation and goodwill, and creates financial harm when the Wyndham owners do not pay the required fees under the terms of their agreements with Wyndham.

## CAUSES OF ACTION
### CLAIM I
### Civil RICO 18 U.S.C. § 1962(c)

(60)    Plaintiffs adopt, reiterate, incorporate by reference and re-allege each and every allegation contained in ¶¶ (1) through (59) of this Complaint as if each were set forth separately herein.

(61) The Defendants, their agents and/or employees are a group of persons, formal or informal, associated together for the common purpose of engaging in conduct constituting an association-in-fact. The various Defendants/companies function together as a continuing unit.

(62) From on or about 2010 to present, Defendants, all of whom are persons within the meaning of RICO, were employed by or associated with an enterprise whose activities engaged in or affected interstate commerce and conducted or participated, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity in violation of *18 U.S.C. § 1962(c)*; including multiple acts of mail fraud, wire fraud, and/or financial fraud.

(63) Defendants' acts are arranged and ordered so as to exhibit both a relationship between the predicate acts and the threat of continuing criminal activity. Defendants' acts of mail fraud, wire fraud, and financial fraud occurred during the fraudulent inducement of and consummation of at least 40 sham/illegal transactions between October 2010 and present.

(64) Defendants induced at least five fraudulent conveyances of Wyndham titles into Resort Property Holdings on or about December 12, 2011, January 4, 2011, May 23, 2012, May 24, 2012, and June 7, 2012. Defendants induced Wyndham owners to engage in at least thirty-five fraudulent conveyances of Wyndham titles into Vacation Wishes between October of 2010 and present that are known to Wyndham at this time.

(65) Upon information and belief, Defendants market their services to other timeshare owners and timeshare companies, not just Wyndham owners and Wyndham.

15

(66)  Defendants utilize wire fraud, mail fraud, and/or financial fraud to accomplish or further their fraudulent scheme.

(67)  Defendants' actions are violations of public policy, violations of state statutes and affect interstate commerce.

(68)  The nature of Defendants' predicate acts, business model and organizational structure involve a distinct threat of long-term racketeering activity and is continuing in nature.

(69)  Defendants have the same or similar purposes, results, participants, victims, methods of commission and are interrelated by distinguishing characteristics, specific hierarchy and meticulous organization.

(70)  The acts committed by Defendants are not isolated events, but represent a pattern of deceptive, fraudulent, illegal and predatory practices.

(71)  Defendants are associated in such a manner so as to form an ongoing organization, formal or informal, and function as a continuing unit of the RICO enterprise.

(72)  The organization's hierarchy is detailed in the Background of this Complaint.  The organization functions with Kares orchestrating and meticulously structuring companies within

16

the enterprise to accomplish each step or aspect of the fraudulent scheme necessary to accomplish the enterprise's ultimate objectives.

(73)  Defendants' enterprise has an existence that is independent to and/or separate from the pattern of racketeering activity in which it engages.  Kares, Boucher, VP Transfers, LLC, and/or all Defendants have some raison d'etre beyond mere criminality.  The association-in-fact enterprise in this case consists of a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose.

(74)  Defendants advertise, represent and warrant that owners of timeshare contracts can legally transfer their contracts and titles to Defendants thereby absolving timeshare owners of any continuing or ongoing legal and/or contractual obligations under timeshare contracts.

(75)  Vacation Wishes LLC also advertises and/or implies that their services may operate to relieve timeshare owners of past due fees stating:

> While we cannot guarantee that you will not receive a statement regarding fees or assessments from prior years, you will no longer be billed, harassed, or threatened with foreclosure regarding current or future fees. It has been our experience that attempts to collect maintenance or assessment fees past or present are directed only to the deeded owner of record, which after the transfer will no longer be you.

See (Attached, Exhibit # 1).

(76)  Vacation Wishes represents that Wyndham owners credit cannot be impacted as the result of the transfer stating "[credit will not be affected] in any way.  Transferring to Vacation

17

Wishes is, in fact, designed to prevent foreclosure and the associated credit issues and problems." <u>See</u> (Attached, Exhibit # 1).

(77)  Defendants utilize the internet, email, U.S. Mail, Fed Ex, UPS and/or the telephone to communicate with prospective clients regarding the services they offer and to induce timeshare owners into believing that Defendants' transfers are legal and operate to relieve timeshare owners of continued legal/contractual liability.

(78)  Defendants utilize the internet, email, U.S. Mail, Fed Ex, UPS and/or the telephone to communicate with individuals purchasing their services on how to complete forms, make payments and utilize their services.

(79)  Defendants utilize U.S. Mail, Fed Ex, and/or UPS to disseminate records, to send forms, to send timeshare owners "a closing statement along with a new deed," and to notify "both resort management and POA management" of the transfer of title.  Defendants also send the seller "a copy of the transferring deed." <u>See</u> (Attached, Exhibit # 1).

(80)  Defendants' acts of transferring Wyndham owners' titles into sham companies constitute illegal and fraudulent conveyances.

(81)  The fraudulent conveyances are made with the intent to hinder, delay or defraud creditors such as Wyndham and Plaintiff Homeowners Associations.

18

(82)  Defendants transfers are void and/or voidable pursuant to public policy codified under various applicable state statutes, including, but not limited to, Tenn. Code Ann. § 66-3-101.

(83)  Contrary to representations by Defendants to timeshare owners, Wyndham and Plaintiff Homeowners Associations still retain the right to foreclose on the properties and to seek past due, current and future fees from the Wyndham timeshare owners who paid Defendants' for the fraudulent and/or void conveyances.

(84)  Defendants profit financially from the conspiracy by fraudulently inducing unsuspecting Wyndham owners to pay Defendants to participate in sham transactions and fraudulent conveyances.  The Defendants' intent of the carefully orchestrated scheme is to avoid paying Wyndham contractually owed fees, while still retaining the ability to profit from the Wyndham contracts being held in the judgment proof shell companies.  Kares and/or Boucher meticulously structured the association-in-fact enterprise, including the intentional undercapitalization of the holding companies, to accomplish this scheme.

(85)  At the outset and/or time of the transaction, Defendants had no intention of paying the contractual obligations that timeshare owners paid Defendants to assume.  Defendants' fraudulent intentions are evident by Defendants' use of sham companies to hold Wyndham titles and Defendants' failure to pay assumed contractual obligations.

(86)  Defendants utilization of undercapitalized judgment proof companies is an action in furtherance of an illegal scheme affecting interstate commerce.  Defendants' actions are to the detriment of Wyndham, Plaintiff Homeowners Associations and Wyndham customers who are induced to participate in the scheme to defraud Wyndham and Plaintiff Homeowners Associations.

(87)  Kares and Boucher illegally and fraudulently retain the benefit of these Wyndham contracts by selling vacation packages to third-parties from a separately maintained company that on the surface appears legitimate and unrelated to the sham companies holding the Wyndham titles.  These rights of use may even be sold back to the timeshare owners utilizing the transfer service thereby permitting the timeshare owners to still vacation at Wyndham resorts without having to pay the required maintenance fees.

(88)  Plaintiffs sustain damages as a result of Defendants' refusal to pay Plaintiffs.

(89)  Plaintiffs are entitled to damages, treble damages, attorneys' fees and any other relief applicable under 18 U.S.C. § 1962(c).

## CLAIM II

### Civil RICO 18 U.S.C. § 1962(d)

Case 3:12-cv-01327   Document 1   Filed 12/27/12   Page 20 of 33 PageID #: 20

(90)   Plaintiffs adopt, reiterate, incorporate by reference and re-allege each and every allegation contained in ¶¶ (1) through (89) of this Complaint as if each were set forth separately herein.

(91)   Plaintiffs have been injured by Defendants' conspiracy to violate 18 U.S.C. § 1962(c), and Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(d) irrespective of Defendants' violation of subsection (c).

(92)   Defendants acted in concert and conspired to profit financially from defrauding timeshare owners and inducing timeshare owners to participate in illegal and fraudulent conveyances carefully orchestrated and designed to hinder, delay, and defraud Plaintiffs of their contractual rights.

(93)   Defendants set up multiple undercapitalized sham companies to hold Wyndham titles with the specific intent of never honoring the contractual obligations to pay any creditors for the titles.  Undercapitalized sham companies were utilized to create judgment proof entities should creditors such as Wyndham and Plaintiff Homeowners Associations seek recourse for nonpayment.

(94)  A civil conspiracy between the various Defendants was a vital and integral aspect to accomplishing the Defendants' unlawful purposes.

(95)   The complexity of the organizational structure, capitalization of the various companies and the method of transaction clearly reflects that each Defendant had a common purpose supported by a concerted action to defraud.  Each Defendant had the intent to defraud, that intent was common to each Defendant and each Defendant had the understanding that the other[s] had the intent to defraud.

(96)  Plaintiffs are entitled to damages, treble damages, attorneys' fees and any other relief applicable under 18 U.S.C. § 1962(d).

## CLAIM III

### Intentional Interference with Current and Prospective Business Relations

(97)   Plaintiffs adopt, reiterate, incorporate by reference and re-allege each and every allegation contained in ¶¶ (1) through (96) of this Complaint as if each were set forth separately herein.

(98)  Plaintiffs had an existing relationship with specific third-parties (Wyndham owners) and/or prospective business relationships with identifiable third-parties that were affected as a result of Defendants' actions.  Plaintiffs have expended considerable effort, time and resources to develop these current and prospective business relationships.

(99)    Defendants had actual and/or constructive knowledge of these relationships, expectancies, and opportunities.  Defendants have specific knowledge of Plaintiffs' business relations and prospective business relations.

(100)  Defendants intended to cause the breach or termination of the business relationship Plaintiffs had with Wyndham Owners.  Defendants intended to and did deny Plaintiffs of their contractual rights.

(101)  Defendants had an improper motive and/or improper means for intending to cause the breach or termination of business relationships between Wyndham owners and the Plaintiffs.  Defendants predominate purpose was/is to defraud Wyndham owners and interfere with Plaintiffs' business relationships for purposes of Defendants' financial gain

(102)  Defendants' methods of improper interference with Plaintiffs' business relationships include, but are not limited to, fraud and deceit for purposes of financial gain and use of fraudulent conveyances pursuant to Tenn.CodeAnn. § 66-3-101.  Defendants committed various acts of mail fraud, wire fraud and financial fraud to accomplish the Defendants and/or the enterprise's purpose.

(103)   Defendants' acted willfully in persuading or attempting to persuade Wyndham Owners to cease business with Plaintiffs.  These actions constitute intentional and wrongful interference with existing business and the actions impact potential future business.  A large aspect of Wyndham's timeshare business emanates from existing owners expanding their

23

ownership and referring third-parties to Wyndham. Defendants' conduct and actions deprive Wyndham of these valid and existing business opportunities.

(104) Defendants' interference with Plaintiffs' business is willful and malicious.

(105) Defendants' interference involves deceit, fraud, undue influence, misuse of inside information, breach of fiduciary relationships, overreaching conduct, and constitutes unfair competition.

(106) Plaintiffs have suffered damages and significant harm as a direct and proximate result of Defendants' tortious interference with the business relations between Wyndham owners and the Plaintiffs.

(107) Plaintiffs are entitled to damages against all Defendants, jointly and severally, in an amount to be determined at trial.

(108) Plaintiffs are entitled to punitive damages.

## CLAIM IV

### Breach of Contract

(109) Plaintiffs adopt, reiterate, incorporate by reference and re-allege each and every allegation contained in ¶¶ (1) through (108) of this Complaint as if each were set forth separately herein.

(110)  Defendants transfer of Wyndham owners' property into Vacation Wishes and/or Resort Property Holdings and subsequent failure to abide by the terms of the contracts regarding that property is a breach of a valid and enforceable contract under Tennessee law.

(111)  Defendants' actions in this regard, directly and proximately, caused Plaintiffs significant harm, for which it is entitled to damages, in an amount to be determined at trial.

## CLAIM V

## Intentional Interference with Contractual Relations

(112)  Plaintiffs adopt, reiterate, incorporate by reference and re-allege each and every allegation contained in ¶¶ (1) through (111) of this Complaint as if each were set forth separately herein.

(113)  Plaintiffs have valid and binding contracts with third parties, Wyndham owners.

(114)  Defendants have knowledge of these contracts.

(115)  Defendants conspired with the intent to have Wyndham owners violate the terms of their contracts.

25

(116)  Defendants formed sham companies and joined others with the intent to interfere with the contracts between Plaintiffs and Wyndham owners.

(117)  Wyndham owners were induced to breach and did breach their contracts as a direct and proximate result of this intentional interference.

(118)  Defendants acted intentionally, willfully, and maliciously by interfering with the Wyndham owners' contracts.

(119)  Defendants' actions are a direct and proximate cause significant harm to Wyndham.

(120)  Plaintiffs are entitled to an award for damages.

(121)  Defendants are jointly and severally liable to Plaintiffs for damages in an amount to be determined at trial.

(122)  Plaintiffs are entitled to an award for punitive damages.

## CLAIM VI

### Procurement of Breach of Contract

#### TENN. CODE ANN. § 47-50-109

(123)   Plaintiffs adopt, reiterate, incorporate by reference and re-allege each and every allegation contained in ¶¶ (1) through (122) of this Complaint as if each were set forth separately herein.

(124)  Plaintiffs have valid and binding contracts with third parties, Wyndham owners.

(125)  Defendants had knowledge of these contracts.

(126)  Defendants conspired with the intent to have Wyndham owners violate the terms of their contracts.

(127)   Defendants formed sham companies and joined with others with the intent to interfere with the contracts between Plaintiffs and Wyndham owners.

(128)   Defendants used inducement, persuasion, misrepresentation, or other means, to induce or procure the breach of violation, refusal, or failure to perform Wyndham owners' lawful contracts.

(129)  Defendants engaged in fraudulent and deceptive conduct, as outlined above, with others with the intent to interfere with the contracts between Plaintiffs and Wyndham owners.

(130)  Wyndham owners were induced to breach and did breach their contracts as a direct and proximate result of Defendants' procurement.

(131)   Defendants' actions are the direct and proximate cause and case in fact of significant harm to Plaintiffs.

(132)  Plaintiffs are entitled to an award for damages against Defendants.

(133)  Defendants are jointly and severally liable to Plaintiffs for damages in an amount to be determined at trial.

(134)  Plaintiffs are entitled to punitive damages.

(135)  Plaintiffs are entitled to treble damages under the statute.

## CLAIM VII

### Violation of the Tennessee Consumer Protection Act

#### TENN. CODE ANN. § 47-18-101, *et seq.*

(136)   Plaintiffs adopt, reiterate, incorporate by reference and re-allege each and every allegation contained in ¶¶ (1) through (135) of this Complaint as if each were set forth separately herein.

(137)   Defendants' acts constitute unfair and/or deceptive practices in violation of the Tennessee Consumer Protection Act.

28

(138)  Defendants' advice that Wyndham Owners should transfer their property into sham companies is a deceptive practice.  Wyndham Owners are deceived into believing their contractual obligations to Plaintiffs have been legally absolved and this deception leads Wyndham Owners to breach their contracts with Plaintiffs to the detriment of both Plaintiffs and the Wyndham Owners.

(139)  Defendants' actions and/or omissions constitute unfair and/or deceptive practices in violation of the Tennessee Consumer Protection Act.

(140)  Defendants acted in a concerted effort to take the actions which violated the Tennessee Consumer Protection Act.

(141)  Defendants' actions resulted in an ascertainable loss of money and things of value.

(142)  Defendants acted willfully and maliciously in violating the Tennessee Consumer Protection Act.

(143)  Defendants' actions are a direct and proximate cause and cause in fact of significant harm to Plaintiffs.

(144)  Defendants are jointly and severally liable to Plaintiffs for damages in an amount to be determined at trial.

(145)  Plaintiffs are entitled to treble damages under the statute.

(146)  Plaintiffs are entitled to reasonable attorneys' fees under the statute.

## Claim VIII

### Civil Conspiracy

(147)   Plaintiffs adopt, reiterate, incorporate by reference and re-allege each and every allegation contained in ¶¶ (1) through (146) of this Complaint as if each were set forth separately herein.

(148)   In attempting to have Wyndham Owners breach their contracts and/or transfer their property interest into sham companies, Defendants have a common design and purpose of interfering with Plaintiffs' business relations and inducing Plaintiffs' customers to breach their contractual agreements.

(149)   Defendants have acted in concert with an unlawful purpose, and with unlawful means, to interfere with Plaintiffs' business relations and to induce Plaintiffs' customers to breach their contractual agreements.

(150)   Defendants committed and/or engaged in overt acts in furtherance of their unlawful conspiracy to interfere with Plaintiffs' business relations and/or to induce Plaintiffs' customers to breach their contractual agreements.

(151)  Plaintiffs have sustained damages as a direct and proximate result of Defendants' unlawful conspiracy.  These damages include loss of profits and damage to and loss of Wyndham's goodwill.

(152)  Defendants' actions are a direct and proximate cause and cause in fact of significant harm to Plaintiffs.

(153)  Defendants are jointly and severally liable to Plaintiffs for damages in an amount to be determined at trial.

(154)  Defendants acted willfully and with malice in taking these actions.

(155)  Plaintiffs are entitled to punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, PLAINTIFFS PRAY FOR THE FOLLOWING RELIEF:

(1)  Compensatory damages against Defendants, jointly and severally, in an amount to be determined at trial, but not less than $100,000.

(2)  Punitive and exemplary damages against Defendants, jointly and severally, in an amount to be determined at trial.

(3)  An award of treble damages and reasonable attorneys' fees, costs, and expenses to Wyndham.

(4)  That this Court issue, after a hearing, a temporary restraining order and a preliminary injunction restraining and enjoining Defendants or their agents and/or employees:

(a)  From contacting any Wyndham Owner in regard to Plaintiffs' business relationship with that Wyndham Owner; and,

(b)  Attempting to delete, modify, alter, or otherwise destroy, intentionally, inadvertently, or automatically, any potentially discoverable and/or relevant information located on any business operated servers, laptops or other computers, cellular phones, handheld devices (i.e., iPhones, Blackberries, or similar devices), personal computers, or any other devices capable of storing electronic information.

(5)  A permanent injunction restraining and enjoining Defendants or their agents and/or employees from contacting any Wyndham Owner in regard to Plaintiffs' business relationship with that Wyndham Owner.

(6)  An award of pre- and post- judgment interest on any award of damages to the fullest extent allowed by law.

Case 3:12-cv-01327   Document 1   Filed 12/27/12   Page 32 of 33 PageID #: 32

(7)  That the costs of this cause be assessed against the defendants;

(8)  That Plaintiffs be granted such other general relief which this Court may deem appropriate; and

(9)  That this cause of action be tried before a jury.
.

                              Respectfully submitted,

                              KING & BALLOW

                              By: /s/ R. Eddie Wayland
                              R. Eddie Wayland BPR 6045
                              R. Douglas Hanson, II BPR 017387
                              Andrew W. Coffman BPR 27160
                              rew@kingballow.com
                              acoffman@kingballow.com

                              Attorneys for Wyndham Vacation Resorts, Inc.
                              1100 Union Street Plaza
                              315 Union Street
                              Suite 1100
                              Nashville, Tennessee 37201
                              Tel: (615) 259-3456
                              Fax: (615) 726-5417

Case 3:12-cv-01327   Document 1   Filed 12/27/12   Page 33 of 33 PageID #: 33