IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

WYNDHAM VACATION RESORTS, INC.;　)
STERLING FOREST TOWNHOUSE　)
ASSOCIATION, INC.; KENSINGTON　)
WOODS TOWNHOUSE ASSOCIATION,　)
INC.; OAK KNOLL PROPERTY OWNERS　)　No. 3:12-cv-1327
ASSOCIATION, INC.; STONECASTLE　)
PROPERTY OWNERS ASSOCIATION,　)　Chief Judge Haynes
INC.; LAUREL RIDGE TOWNHOUSES　)
PROPERTY OWNERS ASSOCIATION, INC.;　)
and WELLINGTON PLACE CONDOMINIUM　)
PROPERTY OWNERS ASSOCIATION, INC.,　)
　　　　　　　　　　　　　　　　　　　)
　　　Plaintiffs,　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
VP TRANSFERS, LLC; VACATION　　　　　)
WISHES, LLC; RESORT PROPERTY　　　　 )
HOLDINGS, LLC; ROGER KARES;　　　　　)
and DANA L. BOUCHER,　　　　　　　　 )
　　　　　　　　　　　　　　　　　　　)
　　　Defendants.　　　　　　　　　　 )

M E M O R A N D U M

Plaintiffs Wyndham Vacation Resorts, Inc., Sterling Forest Townhouse Association, Inc., Kensington Woods Townhouse Association, Inc., Oak Knoll Property Owners Association, Inc., Stonecastle Property Owners Association, Inc., Laurel Ridge Townhouses Property Owners Association, Inc., and Wellington Place Condominium Property Owners Association, Inc. filed this action against the following Defendants: VP Transfers, LLC, Vacation Wishes, LLC, Resort Property Holdings, LLC, Roger Kares, and Dana L. Boucher. Plaintiffs assert claims for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c) and (d); breach of contract; inducement or procurement of breach of contract; intentional

interference with business relations; intentional interference with contractual relations; common law civil conspiracy; and violations of the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 et seq.

Before the Court is Plaintiffs' motion for summary judgment (Docket Entry No. 22), contending that there are not any genuine issues of material fact, as Defendants have admitted all requisite elements of Plaintiffs' claims in their Answer and Response to Plaintiffs' First Requests for Admissions. Defendants have not responded to Plaintiffs' motion for summary judgment.

For the reasons set forth below, the Court concludes that Plaintiffs have met their burden of proof under the summary judgment standard and Plaintiffs' motion for summary judgment should be granted.

## A. Findings of Fact[1]

Plaintiff Wyndham Vacation Resorts, Inc., a Delaware corporation with its principal place of business in Florida, sells vacation timeshare ownership interests. (Docket Entry Nos. 1 and 15, Complaint and Answer, at ¶¶ 5, 19). Wyndham owners typically own deeds to property at the Wyndham timeshare locations. Id. at ¶ 30. Upon purchasing a timeshare property, customers enter into contracts with Wyndham under which these owners agree to pay yearly fees for property maintenance. Id. at ¶ 31. Wyndham alleges that it earns a substantial portion of its revenue through existing timeshare owners' upgrades and new purchases, and through sales to new customers referred by existing Wyndham owners. Id. at ¶ 27. Plaintiffs Sterling Forest

---

[1]Plaintiffs filed contemporaneously with their motion for summary judgment a Statement of Undisputed Facts (Docket Entry No. 22-3) in accordance with Local Rule 56.01(b). Defendants have not filed a response to Plaintiffs' statement of undisputed facts. Accordingly, Plaintiffs' proffered statements of facts are undisputed for purposes of summary judgment. Local Rule 56.01(g).

Townhouse Association, Inc., Kensington Woods Townhouse Association, Inc., Oak Knoll Property Owners Association, Inc., Stonecastle Property Owners Association, Inc., Laurel Ridge Townhouses Property Owners Association, Inc., and Wellington Place Condominium Property Owners Association, Inc. are homeowners associations incorporated in and have their principal places of business in Tennessee. Id. at ¶¶ 6-11, 32. The homeowners associations use the maintenance fees paid by Wyndham owners to provide maintenance services for the various timeshare properties. Id. at ¶ 32.

Defendants VP Transfers, LLC, Vacation Wishes, LLC, and Resort Property Holdings, LLC are all member-managed limited liability companies. Id. at ¶¶ 12-14. Defendants Kares owns, controls and/or manages VP Transfers, Resort Property Holdings and/or Vacation Wishes. (Docket Entry No. 22-3, Statement of Undisputed Facts, at ¶¶ 1-5). Defendant Boucher owns, controls, or manages Vacation Wishes. Id. at ¶ 6.

Defendants use the United States Mail, Fed Ex, and/or UPS to send and/or receive forms, documents and titles to and from timeshare owners for their completion/signatures and to accomplish transfer of timeshare contracts, titles or deeds to either VP Transfers, Vacation Wishes or to Resort Property Holdings. (Docket Entry Nos. 1 and 15, Complaint and Answer, at ¶¶ 51, 78-79). Defendants also communicate via telephone, email, and/or facsimile, and the Internet with timeshare owners and prospective clients regarding the services provided by Defendants and to induce timeshare owners into believing that Defendants' transfers are legal and operate to relieve
timeshare owners of continued legal or contractual liability. Id. at ¶¶ 52-53, 77. These mail and wire communications by Defendants with timeshare owners began in October of 2010 until the

filing of Plaintiffs' complaint. Id. at ¶¶ 51-53.

VP Transfers, LLC is a closing company or transfer company utilized to transfer timeshare deeds, titles or contracts. (Docket Entry No. 22-3, Statement of Undisputed Facts, at ¶ 8). Defendants used VP Transfers to transfer Wyndham timeshare deeds, titles or contracts to Vacation Wishes andResort Property Holdings. Id. at ¶¶ 9-10. Instead of lining up third-party purchasers to buy Wyndham owner contracts when fees are paid to VP Transfers or Kares, deeds or titles, Kares, Boucher, and/or VP Transfers transferred approximately 95 deeds to Vacation Wishes or Resort Property Holdings. Id. at ¶¶ 19-22, 36-37. VP Transfers transferred Wyndham titles to Vacation Wishes and Resort Property Holdings to enable Wyndham owners to avoid their monthly contractually owed and maintenance fee obligations. Id. at ¶¶ 11-14. VP Transfers has never transferred a Wyndham title into a third-party individual that purchased a Wyndham deed, title or contract from a Wyndham owner, but has only transferred Wyndham titles, contracts or deeds to an LLC or a company. Id. at ¶¶ 23-24.

VP Transfers, Resort Property Holdings and Vacation Wishes have not paid any maintenance fees to Plaintiffs for any Wyndham deeds, titles or contracts. Id. at ¶¶ 25-27. Resort Property Holdings and Vacation Wishes do not have any intention to pay those maintenance fees and do not have the liquid funds necessary to do so. Id. at ¶¶ 30-35. The Wyndham deeds held by Resort Property Holdings and Vacation Wishes were all in default as of January 1, 2013. Id. at ¶¶ 28-29. Neither Vacation Wishes nor Resort Property Holdings has made any payments to Wyndham or a Wyndham homeowners association for mortgage fee obligations related to the approximately 95 Wyndham titles, deeds or contracts held by Vacation Wishes and Resort Property Holdings.

## B. Conclusions of Law

"The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment *sua sponte*, so long as the opposing party was on notice that [he] had to come forward with all of [his] evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986); accord, Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." By its very terms, this standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact.
>
> <u>As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.</u> Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery. Celotex, 477 U.S. at 326 (1986). Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. Emmons v. McLaughlin, 874 F.2d 351, 355-57 (6th Cir. 1989). But see Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties, as described by the Court in Celotex:

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

Celotex, 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239, n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991) (quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrat[ing] the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons, 874 F.2d at 353 (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the United States Court of Appeals for the

Sixth Circuit warned that "the respondent must adduce more than a scintilla of evidence to overcome the motion [and]... must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)(quoting Liberty Lobby). Moreover, the Court of Appeals explained that:

> The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1480 (citations omitted). See also Hutt v. Gibson Fiber Glass Products, 914 F.2d 790, 792 (6th Cir. 1990) ("A court deciding a motion for summary judgment must determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'") (quoting Liberty Lobby).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, <u>summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party</u>.
>
> . . . .
>
> Progressing to the specific issue in this case, we are convinced that <u>the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits</u>. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, <u>the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented</u>. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient;

7

> there must be evidence on which the jury could reasonably find for the plaintiff. <u>The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict -- "whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed."</u>

Liberty Lobby, 477 U.S. at 248, 252 (citation omitted and emphasis added).

> It is likewise true that:
> In ruling on [a] motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: 'The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . .'

Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986).

The Sixth Circuit further explained the District Court's role in evaluating the proof on a summary judgment motion:

> A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establish a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." Webster's Third New InterNational Dictionary (1986).
>
> Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or

8

a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). Here, the parties have given some references to the proof upon which they rely. Local Rules 56.01(b)-(d) require a showing of undisputed and disputed facts.

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions:

1.  Complex cases are not necessarily inappropriate for summary judgment.

2.  Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3.  The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case.

4.  This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

5.  A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

6.  As on federal directed verdict motions, the "scintilla rule" applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7.  The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8.  The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to

defeat a properly supported motion for summary judgment."

9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1479-80 (citations omitted).

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

### 1. Civil RICO Claim

The Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), prohibits "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce" from engaging in "a pattern of racketeering activity." Section 1962(d) prohibits conspiracy to violate any provisions of 18 U.S.C. § 1962. To state a claim under § 1962(c), a plaintiff must show "'(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" Heinrich v. Waiting Angels Adoption Servs., Inc., 668 F.3d 393, 404 (6th Cir. 2012) (citation omitted). To state a claim

under Section 1962(d), a plaintiff must allege all of the elements of a RICO violation, and also allege "'the existence of an illicit agreement to violate the substantive RICO provision.'" Id. at 411 (citation omitted). An agreement can be shown "if the defendant objectively manifested an agreement to participate directly or indirectly in the affairs of an enterprise through the commission of two or more predicate crimes." Id. at 411 (internal quotation marks omitted).

Predicate offenses that constitute racketeering activity are listed in 18 U.S.C. § 1961(1). Here, Plaintiffs allege mail, wire and/or financial fraud as the predicate offenses. (Docket Entry No. 1, Complaint at ¶ 62). For RICO purposes, a plaintiff alleging mail or wire fraud "need only show use of the mail [or wire communication] in furtherance of a scheme to defraud and an injury proximately caused by that scheme," and does not need to show the plaintiff's actual reliance on the fraudulent misrepresentations. Wallace v. Midwest Fin. & Mortgage Servs., Inc., 714 F.3d 414, 419-20 (6th Cir. 2013).

A pattern of racketeering activity requires the defendant to commit at least two acts of racketeering within ten years of each other. Heinrich, 668 F.3d at 409 (citing 18 U.S.C. § 1961(5)). In addition, to show a pattern of racketeering activity, a plaintiff must also show "'that the racketeering predicates are related *and* that they amount to or pose a threat of continued criminal activity.'" Id. (quoting H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 237–39 (1989)). This requirement is called the "relationship plus continuity" test. Id. The relationship prong of the test is satisfied "by showing the predicate acts have 'similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'" Id. (quoting H.J. Inc., 492 U.S. at 240). A plaintiff can satisfy the continuity prong of the test "by showing either a 'close-ended' pattern (a series of related

predicate acts extending over a substantial period of time) or an 'open-ended' pattern (a set of predicate acts that poses a threat of continuing criminal conduct extending beyond the period in which the predicate acts were performed)." Id. (citing H.J. Inc., 492 U.S. at 241-42).

The predicate offenses must also have been committed by a RICO enterprise. An enterprise is comprised of any union or group of individuals associated in fact. Boyle v. United States, 556 U.S. 938, 944 (2009). "Enterprises" under RICO need not be "business-like entities," but only groups of "'persons associated together for a common purpose of engaging in a course of conduct.'" Id. at 944-45 (citation omitted). An association-in-fact enterprise must have some structure. Id. at 945. Such an enterprise must have a "purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." Id. at 946. The existence of an enterprise may be inferred from evidence of the illegal conduct committed by members of the enterprise. Id. at 947. "[P]roof of a pattern of racketeering activity may be sufficient in a particular case to permit a jury to infer the existence of an association-in-fact enterprise." Id. at 951.

Here, Defendants Kares and/or Boucher admit to their ownership or control of VP Transfers, Resort Property Holdings and Vacation Wishes, the Defendant LLCs, and Kares admits that Defendants use VP Transfers to transfer timeshare deeds, titles or contracts to Resort Property Holdings and Vacation Wishes. (Docket Entry No. 22-3, Statement of Undisputed Facts, at ¶¶ 1-6, 8-10). Defendants admit to using the mail, telephone, and Internet to communicate with prospective clients regarding the services they offer and to induce timeshare owners into believing that Defendants' transfers are legal and operate to relieve timeshare owners of continued legal or contractual liability. (Docket Entry Nos. 1 and 15, Complaint and Answer,

at ¶ 77). The advertising and transfers that constitute the scheme took place from October 2010 until the present. Id. at ¶¶ 50, 52-53. Neither Resort Property Holdings nor Vacation Wishes has paid any mortgage fee obligations related to the approximately 95 Wyndham titles, deeds, or contracts held by Vacation Wishes and Resort Property Holdings. (Docket Entry No. 22-3, Statement of Undisputed Facts, at ¶ 38). Resort Property Holdings and Vacation Wishes do not have any intention to pay maintenance fees to Wyndham and have not had the liquid funds necessary to do so since at least January 1, 2010. Id. at ¶¶ 30-35. The properties held by Resort Property Holdings and Vacation Wishes were in default in January 2013. Id. at ¶¶ 28-29. Thus, in representing that they would relieve timeshare owners of their contractual obligations to Wyndham, Defendants, having neither the means nor the intention to take those obligations upon themselves, made a misrepresentation that constitutes a "scheme to defraud." See Wallace, 714 F.3d at 419-20.

Defendants' misrepresentation about relieving Wyndham owners of their contractual obligations constitutes a scheme to defraud. (Docket Entry No. 15, Answer, at ¶ 77; Docket Entry No. 22-3, Statement of Undisputed Facts, at ¶¶ 10-16, 30-35, 38). Defendants used the mails or wire communications to transmit documents to and from Wyndham owners in furtherance of this scheme. (Docket Entry Nos. 1 and 15, Complaint and Answer, at ¶¶ 51-53, 77-79). Defendants' scheme to defraud harmed Plaintiffs by causing the maintenance fees to remain unpaid and causing the deeds to go into default. (Docket Entry No. 22-3, Statement of Undisputed Facts, at ¶¶ 25-29). Under this scheme, and using the same methods of advertising and communication and the same Defendant LLCs to transfer the deeds, Defendants transferred approximately 95 deeds instead of lining up third-party purchasers to buy Wyndham owner

contracts when fees were paid to VP Transfers or Kares. (Docket Entry No. 15, Answer, at ¶¶ 51-53; Docket Entry No. 22-3, Statement of Undisputed Facts, at ¶¶ 19-22 36-37). The communications and transfers took place over the course of years. (Docket Entry No. 15, Answer, at ¶¶ 50, 52-53). Defendants therefore committed more than two predicate offenses that were related and continuous. See Heinrich, 668 F.3d at 409. Kares's and Boucher's admitted ownership or control of the Defendant LLCs, together with the pattern of racketeering activity itself, establish sufficient relationship and purpose to show the existence of an association-in-fact enterprise. See Boyle, 556 U.S. at 946, 951.

Accordingly, the Court concludes that Plaintiffs have proved a RICO violation as the undisputed facts establish a scheme to defraud, the use of the mails or wire communications in furtherance of that scheme, injury to Plaintiffs, at least two predicate offenses that are related and continuous, and the existence of a "structure" sufficient to constitute a RICO enterprise.

### 2. Inducement of Breach of Contract

Tennessee Code § 47-50-109 provides, "It is unlawful for any person, by inducement, persuasion, misrepresentation, or other means, to induce or procure the breach or violation, refusal or failure to perform any lawful contract by any party thereto." A claim for inducement of breach of contract embodies the same elements as the common-law tort of interference with contract: "(1) the existence of a legal contract between the plaintiff and a third party; (2) the defendant's awareness of the contract; (3) the defendant's malicious intent to induce breach of the contract; (4) a breach of contract proximately caused by defendant's actions; and (5) resulting damages to the plaintiff." Freeman Mgmt. Corp. v. Shurgard Storage Centers, LLC, 461 F. Supp. 2d 629, 637 (M.D. Tenn. 2006). For an inducement of breach of contract claim, malice

"does not require ill will or spite toward the injured party," but "only requires the intentional commission of a harmful act without justifiable cause." Id. at 639. Thus, "[i]nterference [with an existing contract] is without justification if it is done for the indirect purpose of injuring the plaintiff *or benefitting the defendant at the plaintiff's expense*." Id. (citation omitted) (emphasis in original).

Defendants do not dispute that legal contracts existed between Wyndham and the Wyndham owners and that Defendants were aware of those contracts. (Docket Entry Nos. 1 and 15, Complaint and Answer, at ¶ 25; Docket Entry No. 22-3, Statement of Undisputed Facts, at ¶¶ 12-13). In fact, the undisputed facts reflect that Defendants sought to help Wyndham owners avoid their obligations under those contracts. (Docket Entry No. 22-3, Statement of Undisputed Facts, at ¶¶ 12-13). The maintenance fees required under the contracts have not been paid, and Resort Property Holdings and Vacation Wishes do not have any intention of paying them. Id. at ¶¶ 25-27, 31-35. Defendants have not offered any alternative explanation for how the contractual obligations could be fulfilled. As a result of the nonpayment of maintenance fees, the contracts or deeds were in default as of January 1, 2013. Id. at ¶¶ 28-29, 38. Thus, The undisputed facts reveal that Defendants caused a breach of the contracts between Wyndham and Wyndham owners. See id. The unpaid maintenance fees and deeds currently in default constitute damages to Plaintiffs. See id. at ¶¶ 25-29, 38.

Plaintiffs have also proved malice. Malice requires only that Defendants interfere with an existing contract without justification and for the purpose of benefitting themselves at Plaintiffs' expense. Freeman, 461 F. Supp. 2d at 639. Defendants do not dispute that they received money in return for the deed transfers and that Plaintiffs have been deprived of the maintenance fees

15

because of these deed transfers. (Docket Entry No. 22-3, Statement of Undisputed Facts, at ¶¶ 15-16, 25-29). Defendants do not offer any justification for their scheme beyond enabling Wyndham owners to avoid payment of their maintenance fees, thereby benefitting Defendants at Plaintiffs' expense. See id. at ¶¶ 13-14.

### 3. Intentional Interference with Business Relations

To state a claim for intentional interference with business relations, a plaintiff must show:

> (1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the breach or termination of the business relationship; (4) the defendant's improper motive or improper means; and finally, (5) damages resulting from the tortious interference.

Trau-Med of Am., Inc. v. Allstate Ins. Co., 71 S.W.3d 691, 701 (Tenn. 2002) (footnotes, citation, and emphasis omitted). In Trau-Med, the Tennessee Supreme Court emphasized that plaintiffs must demonstrate some improper conduct "beyond the bounds of doing business in a freely competitive economy." Id. at 700. Thus, as to proving improper motive, Tennessee state law requires "that the plaintiff demonstrate that the defendant's predominant purpose was to injure the plaintiff." Id. at 701 n.5.

Yet "[e]ven if the *motive* for interference was proper, a plaintiff may recover if the *means* of interference was not." Freeman, 461 F. Supp. 2d at 640 (emphasis in original). Some examples of improper interference include:

> those means that are illegal or independently tortious, such as violations of statutes, regulations, or recognized common-law rules; violence, threats or intimidation, bribery, unfounded litigation, fraud, misrepresentation or deceit, defamation, duress, undue influence, misuse of inside or confidential information, or breach of a fiduciary relationship; and those methods that violate an established standard of a trade or profession, or otherwise involve unethical conduct, such as

16

sharp dealing, overreaching, or unfair competition.

Trau-Med, 71 S.W.3d at 701 n.5 (internal citations omitted).

As previously addressed, Defendants were aware of the relationship between Wyndham and Wyndham owners. Defendants intended to interfere in those business relationships, as shown by Kares's admission that Defendants engaged in deed transfers to enable Wyndham owners to avoid their maintenance fee obligations. (Docket Entry No. 22-3, Statement of Undisputed Facts, at ¶¶ 13-14; Docket Entry No. 25, Kares's Response to First Requests for Admissions, at ¶¶ 12-13). Defendants used the improper means of mail and wire fraud and had the improper motive of benefitting themselves at Plaintiffs' expense. Plaintiffs suffered damages as a result of Defendants' interference with business relationships, in the form of unpaid maintenance fees and deeds in default.

### 4. Civil Conspiracy

Under Tennessee state law, civil conspiracy is defined as "a combination of two or more persons who, each having the intent and knowledge of the other's intent, accomplish by concert an unlawful purpose, or accomplish a lawful purpose by unlawful means, which results in damage to the plaintiff." Trau-Med, 71 S.W.3d at 703. As discussed above in addressing Plaintiffs' civil RICO claim, Plaintiffs have sufficiently established Defendants' association for purposes of carrying out an unlawful scheme that caused damage to Plaintiffs. With respect to the mens rea element, Defendant Kares's admissions show Defendants' knowledge and intent that the transfers were made "to enable Wyndham owners to avoid their monthly maintenance fee obligations" and that Resort Property Holdings and Vacation Wishes "do[] not have the intention to pay maintenance fees to Wyndham." (Docket Entry No. 22-3, at ¶¶ 13-14, 30, 33; Docket

Entry No. 25, at ¶¶ 12-13, 31, 34). Accordingly, based upon the undisputed facts the Court concludes that, given the close association of the various Defendants and the lack of viable alternative explanations by Defendants, Plaintiffs have established a claim for civil conspiracy.

### 5. Tennessee Consumer Protection Act

The Tennessee Consumer Protection Act prohibits the use of "unfair or deceptive" practices that cause another person to suffer a tangible loss of money or property. Tenn. Code Ann. § 47-18-109(a)(1). A deceptive practice is a "material representation, practice or omission likely to mislead a reasonable consumer." Vanderbilt Univ. ex rel. Vanderbilt Univ. Health Ben. Plan v. Pesak, 2011 WL 4001115, *17 (M.D. Tenn. Sept. 8, 2011) (quoting Ganzevoort v. Russell, 949 S.W.2d 293, 299 (Tenn. 1997)). An unfair practice is one that "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition." Id. (quoting Tucker v. Sierra Builders, 180 S.W.3d 109, 116-17 (Tenn. Ct. App. 2005)).

The undisputed facts show that Defendants' misrepresentations caused Wyndham customers to engage in approximately 95 fraudulent transactions, reflecting a scheme that was calculated to "mislead a reasonable customer." (Docket Entry No. 22-3, at ¶¶ 37-38). Because fraudulent conveyances are void or voidable, Defendants have caused the contracts or deeds to be in default not only with respect to their own ownership of the deeds, but with respect to the original deed holders' ownership rights as well. See id. at ¶¶ 28-29; Tenn. Code Ann. § 66-3-101. The misrepresentation therefore caused "substantial injury to consumers" in the form of defaults on customers' deeds, without countervailing benefits accruing to anyone except the fraudulent actors themselves. (See Docket Entry No. 22-3, at ¶¶ 15-16, 28-29). As discussed

18

above, the unfair or deceptive practices caused consumers a tangible loss of money or property in the form of defaults on their deeds. Accordingly, the Court concludes that Defendants violated the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-109(a)(1).

## C. Conclusion

For these reasons, the Court concludes that the Plaintiffs' motion for summary judgment (Docket Entry No. 22) should be granted.

An appropriate Order is filed herewith.

ENTERED this the 26th day of August, 2013.

WILLIAM J. HAYNES, JR.
Chief Judge
United States District Court

19